# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

LEO TRIPP, ET AL            CIVIL ACTION NO. 17-0542

VERSUS                     JUDGE TERRY A. DOUGHTY

RICHARD PICKENS, ET AL       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Leo Tripp, Jimmy Tripp, and Steve Stone ("Plaintiffs") developed a solar-powered chemical injection pump to be used in oil and gas production. They allege that they contracted with Richart Distributors d/b/a Flomore Products ("Flomore") to market the product and split the profits evenly. The relationship soured, and Plaintiffs filed this suit in state court against Flomore and Richard Pickens, who is Flomore's CEO and primary shareholder. Plaintiffs asserted claims of breach of contract, detrimental reliance, and unjust enrichment.

Flomore and Pickens ("Defendants") removed the case based on diversity jurisdiction and filed a motion for summary judgment. Doc 29. Plaintiffs conceded to the dismissal of Mr. Pickens as a defendant. Judge Doughty denied Flomore's request for summary judgment because he found genuine disputes of material fact as to whether the Plaintiffs and Flomore had a valid oral contract that could form the basis of Plaintiffs' breach of contract and detrimental reliance claims. Doc 51.

Plaintiffs represent that they later discovered that Mr. Pickens had secretly filed a patent application for the pump that listed him as the sole inventor, and he had lied about it in his deposition.  In April 2018, soon after an unsuccessful attempt to negotiate a settlement of the case, Flomore sent Plaintiffs a letter and gave notice that, to the extent there was a contract between the parties, it was terminated as of May 31, 2018.  Plaintiffs then sought leave to amend their complaint to add claims against Flomore and Mr. Pickens under the Louisiana Unfair Trade Practices Act ("LUTPA") based on (1) the secret patent application and (2) Flomore's unilateral termination of the pump distribution contract without a good-faith basis.

The court found that Plaintiffs had demonstrated good cause and granted leave to amend.  A continuance of the trial was ordered to allow for discovery and other proceedings related to the new claims.  Before the court is Defendants' Motion to Dismiss (Doc. 81) that attacks the new LUTPA claims as (1) untimely and (2) failing to state a claim against Flomore or Mr. Pickens.  For the reasons that follow, it is recommended that Defendants' motion be denied.

**Summary of Relevant Allegations**

This is a Rule 12(b)(6) contest, so the court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff."  Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018).  Plaintiffs' original complaint alleged that they met Flomore representatives at a trade show in 2013 and eventually introduced them to the idea of launching a new pump that Plaintiffs had designed that had

advantages over the pump that Flomore was marketing at the time.  A prototype was demonstrated, and Flomore agreed with the Plaintiffs that they would go into business together to sell the pump and split the profits 50/50.  Flomore would receive the benefit of the improved pump design, and Plaintiffs would benefit from Flomore's expertise in manufacturing and sales.  Plaintiffs allege that they "shook hands on the deal, thereby forming a valid and enforceable contract."

Plaintiffs devoted substantial effort to get the pump ready for sale.  The parties discussed having lawyers reduce the agreement to writing.  Mr. Pickens told Plaintiffs that he would do so, but he never followed through. Plaintiffs allege that Mr. Pickens was attempting induce them to continue developing the pump for market.

The product launched in August 2014, and it was a tremendous success.  Plaintiffs soon attempted to contact Mr. Pickens to discuss moving forward on their agreement to split the profits, but Mr. Pickens refused to discuss it.  Mr. Pickens and Flomore employees soon cut off all communication with Plaintiffs.  Plaintiffs never received any financial benefit from Flomore or Mr. Pickens for sales of the pump or the work they devoted towards development of the pump.

Certain allegations in the amended complaint are particularly relevant to the issues at hand.  A sealed copy of the amended complaint was filed at Doc. 75, and a redacted version is at Doc. 78.  The pleading was filed under seal to protect certain business information, but it is necessary to discuss some of those facts to resolve the pending motion.

The "parties agreed that any patents relating to the pump design would be submitted in the names of the Plaintiffs and Pickens and/or Flomore as co-inventors." Amended Complaint, Doc. 75 at ¶ 7. In June 2014, when Plaintiffs were actively developing the production version of the pump, Flomore and Mr. Pickens secretly applied for a provisional patent for the pump. The application, part of a scheme to steal Plaintiffs' ideas, did not list Plaintiffs as co-inventors. ¶¶ 10-10(a). The application instead listed Mr. Pickens as the sole inventor and applicant. Mr. Pickens signed a declaration of inventorship in which he swore to the truth of the application's contents, including its listing of Pickens as the sole inventor. ¶ 10(b). Plaintiffs allege that, despite the representations in the 2014 patent application, "Plaintiffs are the sole inventors, or, at a minimum[,] co-inventors thereof." ¶ 10(d).

Defendants deliberately hid from Plaintiffs that they had caused the provisional patent application to be filed. Mr. Pickens "made a false statement about the existence of the patent application in his deposition in this matter in September 2017." Plaintiffs did not learn of the application until a December 2017 deposition of a Flomore manager, who admitted that an application had been filed. ¶ 11. Plaintiffs then asked Defendants to produce all materials filed with the patent office concerning the pump. Defendants, after initially refusing to produce the materials, produced a portion of the documents in February 2018. Plaintiffs determined that the material was incomplete, made further demands, and eventually received from Defendants more material in March 2018. ¶ 11.

The produced material included a second, non-provisional patent application that had been filed in June 2015. This application also listed Mr. Pickens as the sole inventor and applicant, and it included a declaration by Pickens swearing to the truth of its contents. ¶ 12. Flomore and Mr. Pickens knew when the application was filed that it contained false statements of material information. Neither Flomore nor Pickens has corrected either of the applications to list Plaintiffs as inventors or co-inventors, which Plaintiffs assert violates federal patent law. ¶ 13. This misconduct was compounded by the fact that Mr. Pickens had represented to Plaintiffs that he would cause Flomore's attorney to apply for a patent that would include Plaintiffs' names once the pump was launched in the marketplace. ¶ 14.

Plaintiffs also base a LUTPA claim on the fact that Flomore and Mr. Pickens sent Plaintiffs a letter on April 23, 2018 to advise that Flomore "was unilaterally terminating the contract between it and the Plaintiffs, effective as of May 31, 2018." ¶ 21. Flomore took this action in bad faith to retaliate against Plaintiffs for asserting their rights under the contract. There was no valid economic reason for Flomore to cease selling the pump, so the termination letter was issued "in bad faith and is contrary to the intent of the contract confected by the parties," so it should be declared null and void. ¶ 22. Plaintiffs believe that Flomore continues to market and sell the pump to this day, as if it were Flomore's own product, with no right to profits benefitting Plaintiffs. The pump has generated substantial revenue for Flomore, but Plaintiffs have not seen a dime. ¶ 24.

**Rule 12(b)(6) Standard**

Defendants have challenged Plaintiffs' LUTPA claims by filing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)). Stated another way, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 127 S. Ct. at 1974).

**LUTPA**

Plaintiffs have amended their complaint to add a claim pursuant to LUTPA. See La. Rev. Stat. § 51:1409(A). In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405. "Because of the broad sweep of this language, 'Louisiana courts determine what is a LUTPA violation on a case-by-case basis.'" Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc., 144 So.3d 1011, 1025 (La. 2014) (quoting Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act:

Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loy. L. Rev. 759, 762 (1996)).

To prove a violation of LUTPA, the Plaintiffs must show: "(1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss." Rockwell Automation, Inc. v. Montgomery, No. 17-415, 2017 WL 2294687, at *2 (W.D. La. May 24, 2017) (citation omitted). To establish a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 35 So.3d 1053, 1059 (La. 2010) (quotations and citation omitted).

Consequently, "the range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. Quality Envtl. Processes, 144 So.3d at 1025. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA. Id. ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.") (quoting Cheramie Servs., 35 So.3d at 1060). See also IberiaBank v. Broussard, __ F.3d __, 2018 WL 5289887 (5th Cir. 2018) (reviewing elements of a LUTPA claim).

**Peremption; Termination of Contract as LUTPA Claim**

Defendants seek dismissal of Plaintiffs' LUTPA claims as perempted under Louisiana law.  A one-year limitations period applies to private actions brought under the Act.  See La. Rev. Stat. § 51:1409(E).  When the lawsuit and the motion to dismiss were filed, LUTPA provided that a private action "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."  Id.  The Louisiana Supreme Court has not yet ruled as to whether Section 1409(E) implicates peremption or prescription, but state appellate courts and federal courts have concluded that the one-year limitation set forth in Section 1409(E) was peremptive rather than prescriptive, although the statute used the word "prescribed."  See America's Favorite Chicken Co. v. Cajun Enters., Inc., 130 F.3d 180, 185 & n. 6 (5th Cir. 1997); Caldwell Wholesale Co., LLC v. R.J. Reynolds Tobacco Co., No. 17-0200, 2018 WL 2209165, at *6 (W.D. La. May 11, 2018); Jones v. Herlin, No. 12-1978, 2013 WL 5270547, at *9 (W.D. La. Sep. 17, 2013); Max Access, Inc. v. Gee Cee Co. of LA, Inc., No. 15-1728, 2016 WL 454389, at *5 (E.D. La. Feb. 5, 2016); Morris v. Sears, Roebuck & Co., 765 So.2d 419, 422 (La. App. 4th Cir. 2000); Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060, 1063 (La. App. 1st Cir. 1990); Canal Marine Supply, Inc. v. Outboard Marine Corp., 522 So.2d 1201, 1203 (La. App. 4th Cir. 1988).

A recent act of the Louisiana Legislature appears to have clarified the issue.  Act Number 337 of the 2018 Louisiana Regular Session, which went into effect on August 1, 2018, changed the wording of Section 1409(E) to read as follows:  "The action provided

by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." The implication of this amendment is that the legislature intended the time period to be prescriptive.[1]

The distinction is important because peremption means that the limitations period cannot be suspended or interrupted. See Glod v. Baker, 899 So.2d 642, 649 (La. App. 3d Cir. 2005); La. Civ. Code art. 3461 ("Peremption may not be renounced, interrupted, or suspended."). In contrast, when claims are subject to a prescriptive, rather than peremptive, period, "prescription may be renounced, interrupted, or suspended, and *contra non valentem* applies..." Borel v. Young, 989 So.2d 42, 49 (La. 2007). The Fifth Circuit, analyzing the one year period to bring claims under LUTPA as peremptive, has found that there are certain situations where the presence of a continuing violation extends the time period a party can bring a claim under LUTPA. See Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 482 (5th Cir. 2002).

In Tubos, the Fifth Circuit held that the continuing violation doctrine applied to the LUTPA peremptive period.[2] Thereafter, the Louisiana Third Circuit Court of Appeal

---

[1] Two courts have addressed the issue following the recent amendment by the Louisiana legislature, both concluding that the amended language regarding the time period contained in Section 1409(E) is prescriptive rather than peremptive. See Trinity Med. Servs., LLC v. Merge Healthcare Solutions, Inc., No. 17-592, 2018 WL 3748399 (M.D. La. Aug. 7, 2018) and Congregation of Immaculate Conception Roman Catholic Church of the Parish of Calcasieu v. Sam Istre Constr., Inc., No. 17-1186, --- So.3d ---, 2018 WL 3751372 (La. App. 3d Cir. Aug. 8, 2018).

[2] In doing so, the Tubos court relied upon opinions of the Louisiana First Circuit Court of Appeal, one of which, in turn, had cited the Louisiana Supreme Court's analysis of the effect of a continuing tort on a *prescriptive*, and not preemptive, statute. Id. at 481-82 (citing Capitol House Pres. Co. v. Perryman Consultants, Inc., 725 So.2d 523 (La. App.

concluded that the continuing tort doctrine does not apply to LUTPA's peremptive period, citing Louisiana precedent that the continuing violation doctrine does not apply to peremptive statutes. See Glod, 899 So.2d at 649 (discussing Tubos but holding that because LUTPA limitations period is peremptive and not prescriptive, the continuing tort doctrine does not apply). Therefore, inconsistency exists between the Fifth Circuit's Tubos decision and Louisiana appellate court decisions regarding the application of the continuing violation doctrine to LUTPA claims that are governed by the former statutory language.

Federal district courts have also been inconsistent with their approach to the application of the continuing violation theory to LUTPA claims. See Neill v. Rusk, 745 F. Supp. 362, 365 (E.D. La. 1988) (finding that the continuing violation doctrine did not apply to the LUTPA peremptive period); CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc., No. 09-1047, 2011 WL 3204701 (M.D. La. 2011) (finding that the plaintiff's claims were prescribed after concluding that the continuing tort doctrine did not apply to suspend a peremptive period); Mark's Airboats, Inc. v. Thibodaux, No. 13-0274, 2015 WL 1467097, at *3 (W.D. La. Mar. 27, 2015) (concluding that acts committed by the defendants may constitute "overt, persistent and ongoing acts" sufficient to find a continuing tort under LUTPA); Mercato Elisio, LLC v. Deveney, No. 15-563, 2016 WL 4181021 (E.D. La. Aug. 8, 2016) (stating that the continuing tort doctrine could extend the peremptive period under LUPTA).

---

1st Cir. 1998), Fox v. Dupree, 633 So.2d 612 (La. App. 1st Cir. 1993) and Benton, Benton & Benton v. La. Pub. Facilities Auth., 672 So.2d 720 (La. App. 1st Cir. 1996)).

The Fifth Circuit has made an Erie interpretation of Louisiana law and held that the continuing violation doctrine does apply to the LUTPA limitations period as set forth in the previous language of the statute.  There is a subsequent state court appellate decision to the contrary, but the Louisiana Supreme Court has not directly ruled on the issue.   The Fifth Circuit has held, under similar circumstances, that it is bound by its prior panel decision "unless such precedent comprises unanimous or near-unanimous holdings from several—preferably a majority—of the intermediate appellate courts of the state in question."  F.D.I.C. v. Abraham, 137 F.3d 264, 268 (5th Cir. 1998).

That is not the situation here, so this court is bound by the Fifth Circuit's holding that "the continuing violation doctrine applies to the LUTPA peremptive period."  Tubos, 292 F.3d at 482.   Furthermore, Judge deGravelles has held that the 2018 amendment is procedural so, under Louisiana retroactivity principles, the clarified prescription period and related doctrine of continuing tort would apply to even claims that preexisted the amendment. Trinity Med. Servs., L.L.C., 2018 WL 3748399, *9.   That opinion is persuasive.

In assessing the limitations defense, it must be kept in mind that the statute of limitations is an affirmative defense that "places the burden of proof on the party pleading it."  Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011).  Under federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations."  Id. at 239-40.  That is why "defenses are generally not the proper subject of Rule 12(b)(6) motions" and may be successful only if the grounds for

the defense "clearly appear on the face of the plaintiff's complaint." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir. 1997).  Dismissal under Rule 12(b)(6) based on statute of limitations is proper only "where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling." United States v. Luminant Generation Co., LLC, __ F.3d __, 2018 WL 4691354,*3 (5th Cir. 2018), quoting Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).  The court now turns to whether Defendants can show that, on the face of Plaintiffs' complaint, the possibility of a continuing violation is excluded in this case.

Defendants argue that the "act" at issue occurred in June of 2014, when Flomore and Mr. Pickens "secretly applied for a provisional patent for the pump."  Doc. 78 at 5 ¶ 10(a).  As Plaintiffs did not file this civil action until February 2017, Defendants contend that their LUTPA claim is too late and thus must be dismissed. Id.  Plaintiffs argue that Defendants' LUTPA violation is "continuing" because federal law requires a patent applicant to truthfully disclose all co-inventors of a patentable item.  Plaintiffs contend that Defendants remain in violation of this disclosure requirement to this day, causing harm to them because of the refusal to pay Plaintiffs.  Doc. 85 at 1.  Plaintiffs further assert that the pattern of bad acts perpetrated by Defendants beginning in 2014 and culminating in the unilateral termination of the contract also constitutes a continuing violation sufficient to "reset the clock" on their LUTPA claim.  Id. at 1-2.

"[A] continuing tort [is] one 'where the operating cause of injury is a continuous one and gives rise to successive damages.'" Miller v. Conagra, Inc., 991 So.2d 445, 456

(La. 2008) (quoting <u>Crump v. Sabine River Auth.</u>, 737 So.2d 720, 726 (La. 1999)).  In other words, "the continuing tort exception only applies when continuous conduct causes continuing damages."  <u>Risin v. D.N.C. Invs., LLC.</u>, 921 So.2d 133, 136 (La. App. 4th Cir. 2005).  "When the damaging conduct continues, prescription runs from the date of the last harmful act."  <u>S. Cent. Bell Tel. Co. v. Texaco, Inc.</u>, 418 So.2d 531, 532 (La. 1982).

Defendants argue that the action of applying for a patent in 2014 was the sole violation that has continuing effects, as opposed to continuous conduct.  The specific conduct alleged in the complaint asserts that in 2014 "Defendants caused to be prepared and filed two patent applications with the United States Patent and Trademark Office covering the pump as a unique invention, but failed to list Plaintiffs as co-inventors, all of which Plaintiffs did not discover until earlier this year ...."  Doc. 78 at 5 ¶ 10.  Therefore, Plaintiffs request this court to consider the time between 2014 to present to survive the motion to dismiss.  Plaintiffs have pled sufficient facts to allow for the potential of continuous damage to them and the applicability of the continuing violation doctrine to their LUTPA claims.

"When an invention is made by two or more persons jointly, they shall apply for patent jointly ...."  35 U.S.C. § 116(a).  A patent applicant's duty to disclose material information is delineated in 37 C.F.R. § 1.56(a):

> A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the [Patent and Trademark] Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and

> prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. **The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.**

37 C.F.R. § 1.56(a) (emphasis added).  Relying upon this regulation, Plaintiffs contend that Defendants have an ongoing duty that has resulted in a new violation of LUTPA each day that the patent application remains on file with the allegedly inaccurate assertion that Mr. Pickens was the sole inventor of the pump design described in the patent application.  They further contend that this violation results in continuous harm, as Defendants have failed to pay them anything for their work.

In further support of their position, Plaintiffs accurately note that the cases from the Louisiana First Circuit Court of Appeal relied upon by the Tubos court addressed situations where the LUTPA violation involved failures to comply with statutorily imposed duties of candor and honesty.  See Capitol House Pres. Co. v. Perryman Consultants, Inc., 725 So.2d 523, 528 (La. App. 1st Cir. 1998) and Fox v. Dupree, 633 So.2d 612, 613-14 (La. App. 1st Cir. 1993).  In Capitol House, the court held that successful applicants for riverboat gaming licenses engaged in a continuing tort by allegedly failing to disclose fraudulent and misleading material information submitted to the Gaming Enforcement Division.  The court found that this was a violation of the continuing statutory duty to disclose violations of the Riverboat Act and, thus, the LUTPA peremptive period began anew each day the successful applicants continued to withhold information.  See Capitol House, 725 So.2d at

528.  In Fox, the court held that the LUTPA peremptive period could not begin to run until the defendant loan broker complied with the bond filing and disclosure requirements of the Louisiana Loan Brokers statute.  The Fox court found that every day the loan broker was in violation gave rise to a new right of action for an unfair trade practice.  See Fox, 633 So.2d at 613-14.

Defendants attempt to counter the Plaintiffs' arguments by summarily contending that in Miller v. Conagra, Inc., 991 So.2d 445 (La. 2008), "the Louisiana Supreme Court specifically rejected the reasoning of Tubos."  Doc. 81 at 3.  In Miller, the Louisiana Supreme Court addressed the defendant's wrongful conduct of accusing the plaintiff of theft and coercing him into terminating their contract.  The court concluded that since the conduct had occurred on a specific date, the operating cause of injury was not continuous.  See Miller, 991 So.2d at 456.  The Miller facts are clearly distinguishable from the allegations presently before the court, as a continuing duty to disclose "exists beyond the date of the patent application and exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned."  37 C.F.R. § 1.56(a).  This duty was not present in Miller.  Furthermore, the reasoning of Tubos was not "specifically rejected" by the Miller court, as the case was not cited anywhere therein.

Defendants also rely upon Mercato Elisio, LLC v. Deveney, No. 15-563, 2016 WL 4181021 (E.D. La. Aug. 8, 2016), another case that is distinguishable from the instant facts.  In Mercato, the plaintiff alleged that the defendant violated LUTPA when he voted against

Mercato's project as a member of the Historic District Landmarks Commission for the City of New Orleans.  The plaintiff contended that the defendant had engaged in a continuing violation of LUTPA by blocking his access to public records concerning a vote by the Commission.  The Eastern District of Louisiana rejected his attempt and concluded that the injury occurred when his application failed to win approval before the Commission.  While Defendants herein attempt to analogize the filing of the patent to the Mercato plaintiff's application to the Commission as the "solitary operative act that alleged[ly] caused Plaintiffs' damages," this court is not so convinced.  Doc. 81 at 5.  The continuing failure to disclose "to the [Patent and Trademark] Office all information known to that individual to be material to patentability" distinguishes these facts from those of Miller and Mercato. See 37 C.F.R. § 1.56(a).

Plaintiffs have also sufficiently pled a pattern of bad faith acts by Defendants beginning in 2014 and culminating in April of 2018 that would result in the one year period not beginning to run until the termination of the contract.  In Tubos, the Fifth Circuit was confronted with the argument that the continuing violation doctrine should be limited to LUTPA claims based on statutory violations, like in Capitol House and Fox.  See Tubos, 292 F.3d at 482.  The Fifth Circuit countered that the defendant was under a statutory duty to perform its obligations in good faith, citing Louisiana Civil Code article 1983.[3]  The allegations in Tubos included continuous unfair or deceptive actions throughout the lease

---

[3] Louisiana Civil Code Article 1983 provides, in pertinent part, that "[c]ontracts must be performed in good faith."

period.  The <u>Tubos</u> court concluded that the allegations that obligations under the lease were violated and that the defendants failed to comply with the duty of good faith were "of a continuous nature, and may constitute an unfair trade practice should the factfinder so determine after trial of the case."  <u>Id</u>.  The court therefore concluded that LUTPA's peremptive period did not begin to run until the lease ended.  <u>Id</u>.

Similarly, this court concludes that Plaintiffs have alleged continuous unfair or deceptive actions throughout their dealings with Defendants.  Specifically, Plaintiffs have asserted that Defendants made promises regarding profit-sharing, failed to disclose and lied to Plaintiffs about the application for the patent, violated and continued to violate 37 C.F.R. § 1.56 by failing to disclose that Mr. Pickens is not the true inventor, unilaterally terminated the contract as an act of retaliation, and failed to deliver any of the profits.  Doc. 78.

Defendants counter that "Flomore was entitled to terminate the contract pursuant to their statutory rights."  Doc. 81 at 6.  Defendants further assert that "Flomore's termination of the contract cannot, as a matter of law, constitute an unfair business practice under LUTPA."  <u>Id</u>. at 7.  They rely upon the Louisiana Supreme Court case of <u>Cheramie Services, Inc. v. Shell Deepwater Production Inc.</u>, 35 So.3d 1053, 1059 (La. 2010).  Defendants accurately assert that Plaintiffs must ultimately show that the alleged conduct under LUTPA "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious."  <u>Id</u>. (citing <u>Cheramie</u>, 35 So.3d at 1059).  Defendants also correctly anticipated that Plaintiffs would rely upon <u>Volentine v. Raeford Farms of Louisiana, LLC</u>, 201 So.3d 325 (La. App. 2d Cir. 2016) to counter Defendants'

arguments.  In <u>Volentine</u>, as described by Defendants in their motion, "the court held that termination of the contract, ***coupled with horrific bad faith conduct***, constituted a violation of LUTPA."  <u>Id</u>. at 8 (emphasis in Defendants' brief).  Defendants then conclude that "Plaintiffs do not – and cannot – allege that there are any associated bad acts on the part of Flomore that ***coupled with the termination of the contract*** constitute a LUTPA violation."  <u>Id</u>. at 8-9 (emphasis in Defendants' brief).

While agreeing with Defendants' assessment of the applicable standard, the court does not agree with Defendants' application of the standard to the relevant facts.  Plaintiffs have alleged sufficient conduct by Defendants in their amended complaint to survive a motion to dismiss as to a pattern of bad faith acts.

Whether a continuing violation or a pattern of bad faith actions, Plaintiffs' have alleged LUTPA claims that fall within the one-year period provided in Louisiana Revised Statute Section 51:1409(E).  Plaintiffs have alleged sufficient facts in their amended petition to state a facially plausible claim for relief.  At this stage of the proceedings, Plaintiffs' allegations of Defendants' conduct constitute a continuing violation sufficient to prevent Plaintiffs' LUTPA claims from being prescribed or perempted under <u>Tubos</u>. The court's duty on a motion to dismiss is to "determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." <u>Thompson v. City of Waco, Tex.</u>, 764 F.3d 500, 503 (5th Cir. 2014) (quotations and citation omitted).  Plaintiffs have alleged facts which suggest that Defendants plausibly may have legal liability.

Page **18** of 22

**Is Mr. Pickens a Proper LUTPA Defendant?**

In their original complaint, Plaintiffs brought claims against Mr. Pickens, who moved for summary judgment on the ground that his actions were undertaken in his capacity as a representative of Flomore. Doc. 29. Plaintiffs conceded to the dismissal of Mr. Pickens as a defendant, and the court granted Defendants' motion for summary judgment on that basis. Docs. 31 and 52.

Defendants now contend that "[f]or the same reason [as in the summary judgment], Pickens cannot be liable to Plaintiffs for his actions – undertaken as a representative of Flomore – in terminating the alleged contract." Doc. 81 at 6. Plaintiffs admit that they have not alleged breach of contract or detrimental reliance claims against Mr. Pickens because they agree that he is not subject to those claims. Doc. 85 at 8. However, they do contend that Mr. Pickens "is subject to the LUTPA claim because a corporate officer is personally liable when he commits a tort such as a LUTPA violation during the course of his work for the corporation." Id. Plaintiffs cite the cases of Indest-Guidry, Ltd., v. Key Office Equipment, Inc., 997 So.2d 796, 811-12 (La. App. 3d Cir. 2008) and Laurents v. Louisiana Mobile Homes, Inc., 689 So.2d 536, 542 (La. App. 3d Cir. 1997) in support of their position. Id.

In their motion to dismiss, Defendants spend only two sentences addressing their argument that Plaintiffs do not state a claim against Mr. Pickens. Doc. 81 at 6. This is notable considering that, in their reply brief, Defendants criticize Plaintiffs' opposition, stating: "Spending a scant three sentences on this topic, Plaintiffs contend that [their]

claims against Pickens in his personal capacity should stand ....”  Doc. 88 at 3.  In their reply, Defendants for the first time refer the court to the Louisiana Supreme Court case of Nunez v. Pinnacle Homes, LLC, 180 So.3d 285 (La. 2015), in an attempt to distinguish Indest-Guidry and Laurents.  In Nunez, the Louisiana Supreme Court addressed the personal liability of an agent of a limited liability company and Louisiana Revised Statute Section 12:1320(D), a statute specifically applicable to members or agents of limited liability companies.  Despite Defendants’ attempt to apply Nunez to the instant facts, it is inapposite, as this court is not faced with the allegation of personal liability of someone in a limited liability company.

More applicable to the case herein are Laurents and Indest-Guidry.  In Laurents, the plaintiff sued a mobile home manufacturer and its manager for fraud and unfair trade practices.  The Louisiana Third Circuit Court of Appeal found that the defendants committed unfair trade practices and that the manager was liable based on his personal representations to the plaintiffs that were “at least oppressive, unscrupulous, and substantially injurious to the plaintiffs.”  Laurents, 689 So.2d at 542.  In Indest-Guidry, a later Louisiana Third Circuit case, the court analogized the actions of the manager in Laurents to the individual defendants in that case stating, “Similarly, in this case, [the company and the manager] owed a duty to [the plaintiff] to refrain from engaging in fraudulent, unfair, and deceptive acts and practices ....”  Indest-Guidry, 997 So.2d at 812.

In light of the scant, and inapplicable, argument made by Defendants as to this issue, and considering the cases from the Louisiana Third Circuit as applied to the allegations of

Plaintiffs' complaint, Defendants' motion to dismiss Mr. Pickens at this stage of pleadings should be denied.

**Conclusion**

Based on the foregoing, the undersigned recommends that the court find that Plaintiffs' claims under LUTPA are not subject to Rule 12(b)(6) dismissal as untimely. The defense is not apparent on the face of the complaint, as amended, and there are potential grounds for application of the continuing violation theory.  The complaint also states a plausible LUTPA claim against Flomore and Mr. Pickens that the defendants have not demonstrated is foreclosed by law.

Accordingly,

It is recommended that the Motion to Dismiss (Doc. 81) filed by Defendants be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. USAA, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of November, 2018.

Mark L. Hornsby
U.S. Magistrate Judge