# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| LEO TRIPP, ET AL. | CIVIL ACTION NO. 17-0542 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| RICHARD PICKENS, ET AL. | MAG. JUDGE MARK L. HORNSBY |

## RULING

Plaintiffs Leo Tripp; his father, Jimmy Tripp; and their business associate, Steve Stone, brought this action against Defendants Richard Pickens ("Pickens") and Richart Distributors d/b/a Flomore Products ("Flomore"), alleging that they failed to honor a contract to split the profits on a solar-powered oil field pump. Plaintiffs assert claims of breach of contract, promissory estoppel, detrimental reliance, and violations of the Louisiana Unfair Trade Practices Act ("LUTPA"). They seek damages and declaratory relief.

Defendants move the Court for summary judgment [Doc. No. 96] on (1) Plaintiffs' claim for revenue from future sales of the solar-powered pump as an element of damages and (2) all of Plaintiffs' claims against Flomore and Pickens brought pursuant to LUTPA. Plaintiffs oppose the motion. [Doc. No. 100]. Defendants have filed a reply in support of their motion. [Doc. No. 106].

For the following reasons, the Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

While not conceding that a contract existed, for purposes of this motion, Defendants contend that, even if there was a contract and even if the contract were breached, the undisputed facts entitle them to summary judgment as requested.

It is undisputed that in October 2013, Plaintiffs met representatives of the Defendants at a trade show for oil field supply products. Ultimately, the relationship between Plaintiffs and Defendants developed to the point that they discussed the idea of launching a new product, specifically a solar-powered chemical injection pump to be used in oil-and-gas-production.

In April 2014, Pickens and Flomore Manager of Operations, Mitch Carey, flew from Oklahoma to Louisiana to meet with Plaintiffs. Plaintiffs contend that they demonstrated the prototype of the S2000 pump in Arcadia, Louisiana. They further contend that they entered into an oral agreement with Pickens whereby Plaintiffs would complete the design and development of the pump, and the pump would then be marketed and sold through Flomore. Plaintiffs further contend that the parties agreed that they would split the profits 50/50 from sales of the pump, which became known as the Flomore S2000 Solar Pump ("the S2000"). Even if this oral agreement or contract existed, it is undisputed that it had no specified term.

After this meeting in Louisiana, Plaintiffs traveled to Oklahoma several times to work on the S2000's design and production. They met and worked with a number of Flomore employees and machine shop. Plaintiffs contend that in 2014 Flomore began marketing and selling the S2000 that they helped design without paying them 50% of the profits.

Plaintiffs further contend that, after the instant lawsuit was filed, they learned in discovery that Defendants secretly applied for a provisional patent for the S2000 in 2014 and a

non-provisional patent one year later. Plaintiffs further contend that Flomore failed to include them as inventors and wrongfully hid the patent application.

On or about April 23, 2018, following a failed mediation between the parties and shortly before the then-scheduled trial date, Pickens sent a letter to Plaintiffs notifying them that Flomore was terminating "the disputed contract," pursuant to Louisiana Civil Code Article 2024, effective May 31, 2018. He followed up with a second letter on May 24, 2018, confirming the alleged termination and notifying them that as of June 1, 2018, Flomore would no longer manufacture or sell the Flomore S2000 pump or any other pump that contains any parts that were the subject of the patent application. Finally, Pickens indicated that, at that time, the patent had not issued, but that he was prepared "to tender" the patent rights by assignment. [Doc. No. 96-5, Exh. C].

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or

nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).

### B. Claim for Damages from Future Sales of the Flomore S2000

First, Defendants move for summary judgment on Plaintiffs' claims for damages from the future sales of the Flomore S2000. Specifically, Defendants argue that Plaintiffs are barred from seeking damages for sales of the Flomore S2000 after May 31, 2018, because any alleged oral contract was of indefinite duration, that they properly terminated the alleged contract with Plaintiffs, that they ceased selling the pumps as of June 1, 2018, and any award of future damages would be speculative.

Plaintiffs oppose summary judgment, contending that every contract has an implied duty of good faith and fair dealing, that Defendants acted in bad faith in terminating the contract, and that the proper measure of damages is the amount that would place them in the same position if

4

Defendants had fulfilled their obligations. They further argue that Defendants' April and May 2018 letters were not a termination of the contract, but a continuation of the pattern of bad faith conduct, and bad faith is a factual issue. Citing case law from Louisiana state and federal courts, they argue that courts have permitted evidence of future lost profits, even when a contract had no specific term, where the contract contemplates an on-going relationship. Finally, they argue that they have presented sufficient evidence to support an award of future damages. They point to the testimony of their expert and further contend that the jury could consider sales of the S3000 pump because that, too, was part of Defendants' bad faith conduct.

"The essential elements of a breach of contract are threefold. First, a plaintiff in a breach of contract claim must prove the obligor undertook an obligation to perform. Next, the plaintiff must prove that the obligor failed to perform the obligation, resulting in a breach. Finally, the failure to perform must result in damages to the obligee." *Bruneau v. Crescent City Cleaning Servs. Corp.*, 209 So. 3d 286, 290 (La. 5th App. 2016) (citations omitted). For purposes of this motion only, Defendants assume that there was an oral contract and that the contract was in effect July 2014 through the end of May 2018.

"Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law." *Id.* at 753. Louisiana Civil Code Article 1983 implies a covenant of good faith and fair dealing into every contract, which includes a good faith requirement in the termination of contracts.

Defendants contend that the contract, if it existed at all, was properly terminated pursuant to Louisiana Civil Code Article 2024. Article 2024 provides that "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and

form, to the other party." "If reasonable notice is not given, then the existing contract remains in force and continues to govern the parties' relationship." *Stegall v. Orr Motors of Little Rock, Inc.*, 48,241 (La. 2d Cir. 2013), 121 So.3d 684, 689.

While that article seems straightforward, other Civil Code Articles and applicable case law provide additional guidance. First, even when there is no specified term, Louisiana courts have recognized that a contract may be "'for continuance and periodic performance.'" *Volentine v. Raeford Farms of Louisiana, L.L.C.,* 48,219 (La. App. 2 Cir. 7/24/13), 121 So. 3d 742, 752-53, writ denied, 2013-2493 (La. 1/17/14), 130 So. 3d 948 (citing LA. CIV. CODE ARTS. 1776, 1975, 2019, 2024). "In a contract for continuous or periodic performance, fulfillment of a resolutory condition does not affect the validity of acts of performance rendered before fulfillment of the condition." LA. CIV. CODE ANN. ART. 1776. "A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith." La. Civ. Code art. 1770.

Moreover, Article 1759 provides that "[g]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." LA. CIV. CODE ART. 1759.

> The term bad faith means more than mere bad judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives. *MKR Services, L.L.C. v. Dean Hart Const., L.L.C.,* 44,456 (La. App. 2 Cir. 7/8/09), 16 So.3d 562; *Bond v. Broadway*, 607 So.2d 865 (La. App. 2d Cir.1992), *writ denied*, 612 So.2d 88 (La.1993). Bad faith is an intentional and malicious failure to perform. Revision Comment (c), La. C.C. art.1997. The determination of whether a party acted in bad faith is a factual issue. *N–Y Associates, Inc. v. Board of Com'rs of Orleans Parish Levee Dist*., 04–1598 (La .App. 4th Cir.2/22/06), 926 So.2d 20, *writ denied*, 06–0666 (La. 5/26/06), 930 So.2d 31; *Weeks v. T.L. James & Co*., 626 So.2d 420 (La. App. 3d Cir. 1993), *writ denied*, 630 So.2d 794 (La. 1994). *Cf. Miller v. Conagra, Inc*., 08–0021 (La.9/8/08), 991 So.2d 445.

*Volentine*, 121 So. 3d at 753.

Even if a contract has an "at will" termination provision, the terminating party must exercise good faith. That is,

> [i]n order to comply with the requirement of good faith, a party exercising his right to terminate a contract at will should consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination.

*Volentine,* 121 So. 3d at 754 (citing LA. CIV. CODE ART. 1770, Revision Comment (f)).

Based on the factual allegations in this case, if Plaintiffs can prove at trial that they made a significant investment of their time and expertise, the jury could find that the parties intended to enter into a contract of long duration to allow them a return on their investment. While the Court is fully aware that the facts of this case differ from those in *Volentine* and Plaintiffs may well face an uphill battle, the Court does not read the guidance from the Louisiana Second Circuit, which it finds persuasive, to require a party's investment to be of a large sum of money. Accordingly, Plaintiffs have raised a genuine issue of material fact for trial as to whether the alleged oral contract, although not of a definite term, was intended to be of long duration.

Further, in light of the facts giving rise to the termination notice, the jury could potentially find that Defendants acted in bad faith, seeking to gain an advantageous position at trial and/or force a settlement.

Finally, to the extent that Defendants contend that such damages are too speculative, the Court finds that Plaintiffs have presented expert testimony upon which the jury could rely.[1]

---

[1] The Court has not relied on Plaintiffs' contention that they can establish contract damages based on sales of the Flomore S3000. If Defendants contend that such comparison evidence is inadmissible at trial, they should file the relevant motion.

Accordingly, Defendants' Motion for Partial Summary Judgment on Plaintiffs' claim for contract damages after May 2018 is DENIED.

### C. LUTPA

Defendants also move for summary judgment on Plaintiff's claims under the LUTPA, LA. REV. STAT. § 51:1405(A).

LUTPA declares as unlawful "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce . . . ." La. Rev. Stat. § 51:1405(A). Under La. Rev. Stat. § 51:1409(A), a plaintiff has a right of action if he suffers "any ascertainable loss" based on the unlawful conduct. "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059 (citing *Dufau v. Creole Engineering, Inc.,* 465 So.2d 752, 758 (La. App. 5 Cir.), *writ denied*, 468 So.2d 1207 (La. 1985) (In order to recover under LUTPA a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct" on the part of the defendant.)). The Louisiana Supreme Court "has consistently held that in establishing a LUTPA claim, a plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc*., 144 So.3d 1011, 1025 (La. 2014) (quoting Cheramie, 35 So.3d at 1059).

In this case, Plaintiffs allege that Defendants violated LUTPA by

1) Making promises regarding profit-sharing that they never intended to keep;

2) Failing to disclose and lying to the Plaintiffs about the application for a patent on the S2000;

8

3) Violating and continuing to violate 37 CFR§1.56 by failing to disclose that Pickens is not the true inventor of the pump components for which he filed a patent application;

[4]) Unilaterally terminating the contract with the Plaintiffs as an act of retaliation against the Plaintiffs for seeking to enforce their rights under the contract;

[5]) Failing to deliver to the Plaintiffs fifty percent of the profits on sales of the S2000.

[Doc. No. 75]. They further allege that the actions by Defendants "were done maliciously, intentionally, and in bad faith, and they have caused the Plaintiffs damages, including the loss of money and economic damages." *Id.*

**1. First and Fifth Claims**

Defendants argue that Plaintiffs' allegations are insufficient to meet the standard required for a LUTPA claim.

With regard to the first and fifth bases, Defendants contend that Plaintiffs seek to use LUTPA as an alternative to their breach of contract claim, which is not permitted under the case law. Further, there was no position of trust between the parties.

Plaintiffs respond that their LUTPA claims are not merely an alternative for a breach of contract claim, but rely on "the continuation of a pattern of bad faith acts by the Defendants," which were not revealed until discovery.

The Court agrees with Defendants as to these claims. The Court finds that Plaintiffs' first and fifth LUTPA claims that Defendants made "promises" regarding profit-sharing that they never intended to keep and that they failed to deliver profits on sales of the S2000 are merely re-characterizations of their breach of contract claims. As

9

Defendants correctly point out, breach of contract allegations alone are insufficient to state a claim under LUTPA. *See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) ("[LUTPA] does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.") (citing *State v. Orkin Exterminating Co.,* 528 So.2d 198, 202 (La. App 4 Cir. 1988)). Accordingly, to this extent, Defendants' Motion for Partial Summary Judgment is GRANTED, and Plaintiffs' first and fifth LUTPA claims are DISMISSED WITH PREJUDICE.

### 2. Second and Third Claims

Defendants also move for summary judgment on Plaintiffs' claims that they failed to disclose and lied to Plaintiffs about the patent application for the S2000 and by failing to disclose that Pickens is not the true inventor of the pump components for which he filed a patent application. Defendants contend that these claims do not fall within the "extremely narrow" range of conduct prohibited by the LUTPA and that Plaintiffs cannot prove that they have ascertainable damages.

The Court agrees that even if these claims are actionable under LUPTA theoretically, Plaintiffs cannot proceed to trial. The undisputed evidence shows that, prior to their receipt of the patent, Defendants, through Pickens, offered to tender the patent to Plaintiffs. The undisputed evidence further shows that they have not sold Flomore S2000 pumps since May 2018, and, therefore, they have not caused Plaintiffs damages by use of the patent. Accordingly, there is no genuine issue of material fact on these claims because Plaintiffs cannot show that they have suffered an ascertainable loss because of Defendants' alleged conduct. Defendants' Motion

for Partial Summary Judgment is GRANTED as to the second and third claims under LUTPA.

### 3. Fourth Claim

With regard to the fourth claim, Defendants contend that Plaintiffs' claim is conclusory and speculative. Plaintiffs respond that there is evidence to support their allegation that the termination letter was retaliatory because it was sent after a mediation where Defendants learned that Plaintiffs intended to seek future damages, shortly before the then-scheduled trial date, and when it was "clear" that Plaintiffs would prevail at trial. Further, Plaintiffs rely on Defendants' alleged bad faith conduct throughout the relationship between the parties.

The Court finds that Plaintiffs have raised a genuine issue of material fact for trial on this claim. The jury could find at trial that Plaintiffs have sufficiently proven that there was an oral agreement between the parties and that Defendants acted in bad faith by failing to honor that agreement and/or hiding their patent application, an application 0 which did not credit Plaintiffs' contributions. This type of evidence coupled with evidence that the "termination" came about immediately after mediation and shortly before the then-scheduled trial date are sufficient to raise a genuine issue of material fact that Defendants engaged in the type of unethical conduct prohibited by LUTPA. Accordingly, Defendants' Motion for Partial Summary Judgment on this claim is DENIED.

### 4. Claims Against Pickens

Finally, Defendants argue that Plaintiffs have failed to present facts sufficient to raise a genuine issue of material fact for trial whether Pickens is individually liable under LUTPA.

Plaintiffs disagree.

The Court has found that Plaintiffs' one LUPTA claim survives summary judgment, and that one claim is based upon Pickens' alleged retaliatory conduct in attempting to terminate the contract. Given the factual dispute, the Court finds that, under the previously cited case law, *Indest-Guidry, Ltd., v. Key Office Equipment, Inc.*, 997 So.2d 796, 811-12 (La. App. 3d Cir. 2008) and *Laurents v. Louisiana Mobile Homes, Inc*., 689 So.2d 536, 542 (La. App. 3d Cir. 1997), the facts and evidence against Pickens, when viewed in the light most favorable to Plaintiffs, are sufficient to present this claim at trial. Accordingly, Defendants' Motion for Partial Summary Judgment is DENIED to this extent.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [Doc. No. 96] is GRANTED IN PART AND DENIED IN PART. To the extent that Defendants move for summary judgment on Plaintiffs' first, second, third, and fifth LUTPA claims, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED. Plaintiffs have raised a genuine issue of material fact for trial on their claim against all Defendants for breach of contract damages after May 2018 and on their LUTPA claim based on Defendants' alleged retaliatory termination of the oral contract.

**MONROE, LOUISIANA, this 1st day of May, 2019.**

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**